We will proceed with the next case set on the 11 o'clock call, People v. Harrison. We've got Mr. Stornit and Mr. Daley. Good morning, Your Honor. Please, the court. Counsel. This case, as the court is well aware, revolves around an aggravated DUI in which a serious bodily injury occurred. The only issue really at this point is the question of the suppression of the blood draw. The situation, well, for purposes of my argument, I'm going to relay a few or highlight a few relevant facts. And no time at the scene was, I find, given a PDT test. Mr. Harrison was, after he was arrested, he was taken to the Belleville Police Department for a breathalyzer in which he refused. Based upon this, the officer then took him to St. Elizabeth's Hospital for a blood draw in which he also did not consent and, in fact, refused. And no time was a warrant applied for, contemplated, it appears, in any sense. At the hearing on the suppression motion, as the court may have noticed from the briefs, is that the state only had the police officer's report put into evidence. Well, and I'm going to overstate, it's almost an overstatement. It was not even put into evidence. The judge was allowed to read the report. It was stipulated to by me as well. But what is important about that factually is that at no time was there any mention of exigency. In other words, as has been relayed in the McNeely case, the officer did not in his report say, you know, we were concerned or I was concerned about the fact that his blood alcohol was going to diminish over time. And that, or that, you know, that the officer was, for whatever factual reason, was unable to contact the state's attorney's office or contact a judge in St. Clair County to get a warrant. No explanation at all was given as to why he just kind of pushed my client through the system straight on over to the hospital to have his blood drawn. In fact, it's also interesting to note that in the police report, there was no specific mention of why he even did this. Meaning, why did he just feel the ability to take my client over to St. Elizabeth's Hospital and have his blood drawn? Now, the state did mention in the brief, and they are correct, that at the trial of this matter, Officer Rancini was called as a witness. He was actually, he had left the Belleville Police Department and had moved to, I think, moved to California, so they brought him in for the trial. He did mention, I think, that he felt he could do this under some, I think he called it a quote-unquote special law. So factually, that's, those are the important facts, I believe, that need to be dealt with. What I think... I think, Counsel, let me just make... Yes, sir. We can consider that testimony, even though it came in at the trial, and we're dealing with a motion to suppress here. You're not saying that we cannot consider that? No, I don't, I mean, I'm agreeing with you. I think you can consider that. But I think that one of the major sort of overarching issues in this case is the ultimate question of, you know, what is the officer's duty or right to go ahead and have the blood drawing done against a particular suspect, especially in light here, my client's consent? That's sort of the overarching issue in this whole case. Now, what makes this, what makes this particular case with these particular facts somewhat thorny, and perhaps even somewhat a first impression, is the question of that the cases that have been bantered back and forth by myself and by the State on this come down to cases that deal with very specific holdings. Now, I think that what is, and, you know, with the possible exception of the Armour case, which was decided by this Court, but I think that the cases that surround this issue sidestep oftentimes the ultimate issue we're trying to decide in this case. In Missouri v. McNeely, which is the Supreme Court case that sort of gave rise then to the Armour case, what they dealt with in that case specifically was the question of exigency. Now, I think it is important, and I've read the case, and I've read the case, and I've read the case, that it seems to me that the U.S. Supreme Court was dealing with a situation in which they found that the State has to come up with an exception to a statute similar to what we're dealing with here in Illinois. In fact, they were dealing with the Missouri statute, which I put in my brief. I put the Illinois and the Missouri statute, and I think they're very similar in terms of content. What they say is that, well, I mean, the U.S. Supreme Court deals with, and in fact, even if you want to take a step back analytically, it's the same sort of thing the Supreme Court said in the Schmerber case, Schmerber, that we're first dealing with the question of that this is a search. Drawing blood from someone is a search. And the language in both of those cases seems to find this is a rather invasive search. This is not, you know, it's not searching a car. It's not searching a home. It's not even something like a pat-down. I mean, it's fairly invasive. So the way I read the McNeely case, and to some extent Schmerber as well, is what they're saying is we start with the premise that it's an invasive search and that the Fourth Amendment should apply. However, we can find, and the Supreme Court does, we can find exceptions to that by using very narrow exceptions, one of which was the exigency question. And what the Supreme Court said was, okay, if there is a factual question taking the totality of the circumstances on a case-by-case basis, we can find that that exception does apply in certain circumstances. What is interesting, and I will kind of relate this back, is Schmerber, which was decided back in 1966, sort of says the same thing. It doesn't use that specific language, but I think their holding is very similar. And they say, you know, in the Schmerber case, they decided that they felt that the police officer may have faced some sort of exigent circumstance or emergency, I think is what they used, that would sort of overborne, if you will, the Fourth Amendment. Now, we move forward then in time to this Court. And in this Court, I'm talking about Armour, which was decided approximately last year. In that case, as this Court is probably well aware, they upheld the suppression of a blood draw even when the officer was relying upon the implied consent statute. Now, I understand that the decision in the holding, and once again, I've read it as many times as I can possibly read it, to try to ascertain what that Court was thinking. But it appears to me, from dicta, was that they sort of brushed aside the question of implied consent statute because of the fact that the facts in that case did not rise to the level of coming up with a reason for the exigency. Now, I think this case, Mr. Harrison's case, is even an easier decision for this Court to make. None of those fatality of circumstance type arguments were never evidentially given to the judge. In addition, the only exception, if you will, that was given by the State as to why they should not be suppressed. Thank you, Counselor. You have a chance for rebuttal. Thank you. Good morning. Still your Honor. May it please the Court, Mr. Stroman. Quick background based upon Mr. Stroman's argument with regards to the arm, because I was actually the attorney who represented the State in that case. And the good faith exception was not actually raised in that case, even though there was some testimony about the officer's reference to getting the blood draw based upon statutory authority because the State did not argue implied consent, and so therefore it was forfeited. And that's not the situation here. Obviously, the State did raise the good faith exception, and therefore it's been preserved. And therefore now, based upon research I just did this morning, it appears to be a case of first impressions still in Illinois. Counselor, I was just going to ask you that. Yes. I've been trying to keep up to see if anything's come out of nothing yet. Well, since it was argued at the trial court, I guess the State has maybe thought about this before this case. I was just curious if there were other cases in the pipeline in other districts where this good faith exception to the Expulsionary Rule has been raised that we should be on the lookout for. I was bombarded with hostile prosecutors after Armour came out, and so I informed them that you need to start raising the implied, excuse me, good faith exception for cases going forward where it appears that the facts would objectively show a straightforward application of Missouri v. McNeely. And I think what's important to bring out at that point, based on that observation, is I don't really disagree with really anything which Mr. Storman is saying. Understanding the State's argument here is principally that the good faith exception should apply. The good faith exception, I think, inherently presumes an application of that law in the face of what is objectively a Fourth Amendment violation. What we have in this case, I believe, was there was an accident and there was an injury. The defendant was transported, excuse me, I'm sorry, not transported. The defendant was, after some interchange, the officer developed probable cause to believe that he was under the influence. He did refuse a breath test, and that was taken for what appears to be an involuntary blood draw. There was some testimony where he began to speak about how he did not want to have the blood drawn. There was an objection that sort of cut off that line of inquiry. But I think that you can probably, I'm not going to contest the fact that it appears that if that had continued, there would have been testimony with regards to the defendant not wanting the blood drawn. So I'm sort of harnessing that particular fact to get around, I think, a secondary issue, which I sort of briefly mentioned in the brief about the application of implied consent in the Fourth Amendment construct. That's not something that Missouri v. McNeely ever got to. It went strictly on the basis of implied, strictly on the basis of Fourth Amendment, because in that case, the defendant had unequivocally revoked his consent. So that being the case, there was really no need to get to the implied or the living of implied consent laws. And I think we have sort of a similar situation here. So I don't think we're done yet with seeing that argument in the face of McNeely, and I think it's an interesting one. And there's a lot of cases that are just coming out, like the Nebraska Supreme Court case, which I think is a fairly good analysis. But I think for purposes of argument, we're going to go forward with the understanding that the blood draw was taken involuntarily. So the question then becomes, does due to circumstances here of the good faith exception apply? There are – the U.S. Supreme Court has discussed the good faith exception, and I discussed Davis v. U.S. to some degree in this case. The Supreme Court notes that the Fourth Amendment, although it bars, obviously, warrantless searches, the amendment silences the repercussions for a violation of that. The exclusionary rule is actually something that's developed over time. We learned about it in law school. It's sort of a judicially crafted remedy, the fruit of the poisonous tree, that type of thing, where this is intended to act as essentially a punitive measure against police agencies or government officials, if you will, for violations of the Fourth Amendment and the Fifth Amendment. But that being the case, the Supreme Court said that it's a particularly harsh remedy because what it does is it's removing from the trier factor from a prosecution altogether what is otherwise quite obviously reliable and sometimes extremely inculpatory evidence against a particular individual. So the exclusionary rule was to be applied in that particular circumstance where the court had felt that it was a necessary remedy to account for what the court describes as deliberate, reckless, or grossly negligent action on the part of police agencies. However, the court also went on to discuss the fact that as the level of recklessness and intent, et cetera, goes down, the necessity for the exclusionary rules application similarly diminishes. And that was really the evolution of the good faith exception. The Supreme Court in another case, a later case, Hearing v. United States, I think succinctly identified this has to be applied. It says whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances at the time. The defendant in this case was arrested two years before McNeely was decided. So I'll get to the state of Illinois here in a second on that. But I do want to talk a little bit about Illinois' application of the exclusionary rule because it's a little bit different. I cite several out-of-state decisions. That's really the only thing we have at this point as far as a straight application of McNeely and the good faith exception. Illinois is a little bit different. And that relates back to a decision called Peeble v. Kruger. In Peeble v. Kruger, Illinois had written a statute which allowed for no-knock search warrants. It was challenged on constitutional grounds. And the Illinois Supreme Court had held that it was illegal both under the Fourth Amendment and also under the Illinois Constitution, which in some circumstances, and we have not a limited lockstep document on that, but in some circumstances, the Illinois Constitution affords greater protections than the federal Constitution. The state had attempted to argue in Kruger that the good faith exception should apply, and the Supreme Court rejected that. However, in a later case called Peeble v. La Flores, a much more recent decision, the Supreme Court was dealt with the application of a police officer's conduct in furtherance of a statute where the court had invalidated the statute but found that the police officer acted in good faith. And the distinguishing characteristic between Kruger and the Supreme Court found was the fact that that particular statute had been essentially withstood judicial scrutiny. So under those circumstances, the court found that the application of the good faith exception should apply. And that appears to be the current state of how Illinois views the good faith exception. It's something basically that you have a law, and the law at that time was valid, objectively determined to be valid, and officers acted in furtherance of that. So the officer here talks about the special statute. Officers are not lawyers, judges, legal practitioners. They're trained to do certain things. A special statute is undoubtedly referring to the Illinois Compliant Consent Statutes, which authorized, on their face, the actions that the officer undertook. So that can map now to Illinois' law on this. I cite several cases which predate McNeely where the specific statute at hand here was discussed by courts of review. And that specific statute is 625 ILCS 5-11-501.2C2. And that's the involuntary blood draw. And we can remember there was an accident involving death there or bodily injury. One particularly interesting case that affirmed the constitutionality or the validity of the statute is a case called People v. Ruffle, which is an Illinois appellate court case. But it discussed that the statute's validity was hinged upon the evanescent nature of the blood and that the exigent circumstance that exists that allows this type of action under the statute is because of the fact that the blood dissipates, which is, of course, was rejected, obviously, on South Four Squares by McNeely later on. But we know that that's what McNeely says. But at the time that the officers did this, this was the state of the law in Illinois. They had a statute. And there was case law which supported that statute. Now, the defendant remarks in the reply, before there was no testimony, the officers, you know, specifically relied on the statute. In the few seconds I have left, I want to quote the Illinois Supreme Court in Leflore. It said that we're not going to apply the exclusionary rule where, quote, an officer could have reasonably relied in objective good faith on binding appellate judicial decisions and the constitutional norms established thereby. So that being the case, it's really an objective criteria, not a subjective one. It doesn't make any sense to hold officers to be legal practitioners where they can say, well, under People v. Ruffle, I knew that I could do this if the statute was still constitutional at the time. It's an objective reliance on good faith belief of the validity of the statute. At the time that the officer did this, there was a statute. It had withstood multiple challenges to its validity. And I think under those circumstances, when we apply the test that's been clearly set forth by the Supreme Court, a good faith exception has to apply. And the court was correct in refusing to suppress the blood test results in this case. Thank you for your time. Thank you. Rebottom. Thank you, Your Honor. I think that what is important is I'm going to make this super full of point because I don't have much time. I think that many times, as was just argued, that the good faith exception has been used to say, okay, well, we're going to overlook this because there is a reasonable belief in this. However, I think it is important to note that most of those cases, if not all those cases, deal with a situation that is not nearly as invasive as a blood draw. So I think, you know, Gregor was about, you know, no knock. That's breaking into a house. Now, I understand breaking into a house, you know, knocking down a door or whatever is not happy. Nobody likes that. However, you know, holding someone's arm out there and drawing their blood is much more invasive, and I think that should be a consideration of this court. Now, as to the question of the underlying good faith situation, now, what I'd like to do is real briefly is read from Sherman, which was decided in 1966. Okay. So this is a decade or more before, you know, my client was arrested. The importance of informed detachment, deliberate deliberation of a magistrate of the issue, whether or not to invade another person, excuse me, another body in search of evidence of guilt is indisputable and great. The officer in the present case, however, might reasonably have believed he was confronted with an emergency which would delay necessary to obtain a warrant under the circumstance threatened with destruction of evidence. The reason I'm reading that to you is because I think it is unfair to say, well, this police officer couldn't have known or couldn't have been taught. I concede the point that he's not, that a police officer is not a judge or a, you know, law clerk or a lawyer or any of these other things. But I think it's clear from 1966 the Supreme Court said this is an invasive situation and we need to take care that we don't violate the Fourth Amendment. Now, as to the constitutionality question which was raised by the state, a couple of real brief points. Most of those cases, like people versus, I don't know, I'm not sure how to pronounce it, gated, and many of the cases that were cited upheld the statute on questions of mostly dealing with the civil side of this. Dealing with the question of, you know, should we suspend this person's license? Now, when it was raised by the state in their brief and in my reply, you will notice that what I'm arguing in this case, although it has never been raised and I understand that, is that this cannot be applied constitutionally to Michael. It's an as-applied situation. In other words, the statute can't stand and has withstood direct attack on the question of that, you know, if there is a student seat under which kneeling applies, if there's another situation that would apply that would be a direct, you know, exception to the Fourth Amendment. Now, it's also interesting, real quickly, is that in Schmermer, 1966, they specifically rejected a search incident to arrest exception. So, I think what the Supreme Court is trying to say, and it's not really met with this issue, you know, full head-on, is the question that the Fourth Amendment has to stand greater than one of these statutes. That there has to be, the state has to come up with an exception that is valid, not, oh, we didn't know, oh, we just thought the statute would work. And that is what this Court more or less said in Norman. And I think this Court should follow that reason because I think it's valid reason. So, counsel, let me make sure I understand your argument. You're saying for the officer to be acting in good faith, there has to be the implied consent statute, which has, is valid, and there has to be exigent circumstances as well? I think it has to be that way. I think it really almost has to be that way. Because otherwise, otherwise, the other cases, like McNeely, that, or, you know, Schmermer, or a variety of other cases, you know, could have been decided on the question of, well, that's what the statute says. Okay? Did McNeely get to that? Well, I think a reading of McNeely, and of course it's a Supreme Court case, and it's long. Am I finished? Yeah, finish it up. Okay. Yes, it dealt with the specific issue of exigency. However, I think that much of the other language in that opinion deals with the question of, this is a Fourth Amendment violation, and if you can't come up with some reason why we should ignore the Fourth Amendment, then it has to stay. Thank you. We'll take this case under advisement, and we're going to take a...